Daniel C. Girard (State Bar No. 114826)
Amanda M. Steiner (State Bar No. 190047)
Alex C. Turan (State Bar No. 227273)
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Plaintiff Eileen Epstein

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EILEEN EPSTEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TYSON FOODS, INC., a Delaware corporation,<br><br>Defendant. | CIV. NO.: C-08-02800 MMC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br>JURY TRIAL DEMANDED |

Plaintiff Eileen Epstein, on behalf of herself and the proposed class defined herein, alleges as follows:

## INTRODUCTION

1. Starting in May 2007, Defendant Tyson Foods, Inc. advertised its mass-marketed chicken and chicken products as "Raised Without Antibiotics" and "Raised Without Antibiotics that impact antibiotic resistance in humans." Tyson in fact uses a type of antibiotic known as "ionophores" in raising its chickens, and injects a vaccine containing human antibiotics into its chicken eggs shortly before the eggs hatch. Tyson's claims to the public that its chickens are antibiotic-free allows it to raise the price of its "Raised Without Antibiotics" chicken without a corresponding decrease in sales figures. In other words, Tyson's misrepresentations allow it to overcharge people for its chicken and chicken products. Tyson in fact saw a substantial increase in volume at the artificially elevated price.

2. Plaintiff brings this case on behalf of a class of all persons and entities who purchased Tyson chicken or chicken products in California after May 16, 2007 (the "Class"). Plaintiff and Class members have been damaged by paying artificially inflated prices for chicken or chicken products that were falsely advertised as "Raised Without Antibiotics" and "Raised Without Antibiotics that impact antibiotic resistance in humans."

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed class, on the one hand, and Defendant, on the other, are citizens of different states.

4. Venue is proper in this District under 28 U.S.C. § 1391(c) because Defendant's contacts with the District are sufficient to subject Defendant to personal jurisdiction in this Court.

## INTRADISTRICT ASSIGNMENT

5. Assignment is proper to the San Francisco or Oakland divisions of this District under Local Rule 3-2(c)-(d), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in San Francisco County.

## PARTIES

6. Plaintiff Eileen Epstein is a resident of the County of San Francisco, California. Plaintiff purchased Tyson's chicken products on several occasions during the relevant time period and has suffered an injury-in-fact due to Defendant's fraudulent, unlawful, unfair and deceptive practices.

7. Defendant Tyson Foods, Inc. is a Delaware corporation headquartered in Springdale, Arkansas and Tyson is registered to do business in California. Tyson is the country's second largest chicken producer.

## FACTUAL ALLEGATIONS

8. Starting in May 2007, Tyson advertised its mass-marketed chicken and chicken products as "Raised Without Antibiotics" or "Raised Without Antibiotics that impact antibiotic resistance in humans." Tyson in fact uses a type of animal antibiotic known as "ionophores" and a human antibiotic known as "gentamicin" in raising its chickens.

**The Antibiotics**

9. Ionophores are antibiotics. The United States Department of Agriculture ("USDA"), the Food and Drug Administration, and the American Veterinary Medical Association all consider ionophores to be antibiotics. The Food Safety and Inspection Service ("FSIS"), an agency within the USDA to which Congress has delegated authority to regulate the labeling of poultry labels, also classifies ionophores as antibiotics.

10. Ionophores are used throughout the chicken industry to prevent coccidiosis, a disease caused by a protozoan-type parasite that lives and multiplies in the intestinal tract of animals, including chickens. The spread of coccidiosis is a significant concern in the chicken industry because coccidiosis causes severe symptoms like the inhibition of food digestion and nutrient absorption, dehydration and blood loss, and may cause death.

11. Tyson feeds its chickens ionophores after they hatch. Ionophores are not used to treat illnesses in humans and are not believed to raise human health concerns.

12. Tyson also injects a vaccine containing gentamicin, a human antibiotic, into its chicken eggs shortly before the eggs hatch. Tyson asserts that this use of gentamicin is a standard practice because the term "raised" refers only to after the eggs hatch. Gentamicin has been used for more than 30 years to treat a variety of infections in humans and is stored by the federal government as a treatment for plague and other biological agents.

**Tyson Misrepresents Its Chicken As "Raised Without Antibiotics"**

13. On or about May 1, 2007, Tyson asked the FSIS to approve a chicken label that says "Raised Without Antibiotics." Tyson's application listed three ionophores (salinomycin, narasin, and monensin) in the feed ingredient list. Nevertheless, on May 16, 2007, the FSIS approved Tyson's application.

14. After FSIS approved Tyson's unqualified "Raised Without Antibiotics" claim, the company initiated a multimedia advertising campaign that was internally called "Project Sting." A subsection of Project Sting, the "Thank You" campaign, placed significant importance on the "Raised Without Antibiotics" language. The advertisements uniformly featured smiling children, often accompanied by a parent. Many of the advertisements included a heading in large print declaring

"Chicken your family deserves, raised without antibiotics." Project Sting was clearly intended to "[s]trengthen [the] emotional connection to [the] Tyson brand" by appealing to the public's safety and health concerns.

15. Tyson received overwhelmingly positive consumer feedback and believed its multimedia campaign was a large-scale success. After conducting market research in the form of consumer reaction groups, Tyson found that nine out of ten consumers considered it important to have antibiotic-free chicken and that it was the second most important claim that consumers looked for when shopping for chicken. As a result of the advertising campaign, Tyson was able to increase its chicken prices substantially while, at the same time, increasing sales of Tyson chicken by tens of millions of pounds. The "Raised Without Antibiotics" advertising campaign was internally described as having a "dramatic" effect on sales.

16. On September 12, 2007, FSIS informed Tyson that its "Raised Without Antibiotics" approval had been a mistake and that it intended to revoke its approval. Tyson immediately sought to prevent the FSIS from revoking its approval.

17. On November 6, 2007, Philip S. Derfler, Assistant Administrator of FSIS, sent a letter to Tyson stating that "[i]t is longstanding FSIS policy that ionophores are antibiotics and, therefore, FSIS has not approved labels bearing a 'Raised Without Antibiotics' claim if the source animals were fed ionophores. The Tyson labels at issue were thus approved in error by FSIS staff. Accordingly, we advised Tyson that FSIS intended to revoke their approval." FSIS gave Tyson four options: (1) remove all "Raised Without Antibiotics" labels within 45 days; (2) stop using ionophores in its feed formulation, in which case the "Raised Without Antibiotics" label would be technically accurate; (3) petition FSIS to initiate a public notice and comment process on the use of ionophores in poultry and meat; or (4) submit a revised label application.

18. Advertisements containing Tyson's unqualified "Raised Without Antibiotics" claim remained in the marketplace months after September 12, 2007, the date on which notified Tyson that the label approval had been a mistake. As late as November 30, 2007, Tyson Senior Vice President of Product Marketing David Hogberg was telling other Tyson employees that "no one should be holding up anything because of the RWA ['Raised Without Antibiotics'] labeling issue." Mr. Hogberg encouraged

others to "GO! GO! GO!" onward with the campaign. Tyson also purchased additional television advertisements featuring the "Raised Without Antibiotics" language on September 27, 2007, to run through January 20, 2008.

19. Tyson also distributed point-of-purchase materials to supermarkets across the country with the unqualified "Raised Without Antibiotics" language. Tyson took no action to remove unqualified point-of-purchase materials from the market until February 28, 2008. On that date, Tyson sent out an internal "action notice" intended to begin phasing out of all point-of-purchase materials that contained the unqualified "Raised Without Antibiotics" language.

### Tyson Comes Up With A Different Misrepresentation For Its Chicken

20. On December 18, 2007, Tyson submitted an application to FSIS seeking approval of a revised label with qualifying language. The next day, FSIS gave Tyson permission to use "Raised Without Antibiotics that impact antibiotic resistance in humans" on its labels.

21. On June 2, 2008, the FSIS issued a letter to Tyson rescinding its approval of the "Raised Without Antibiotics that impact antibiotic resistance in humans" label because FSIS found that Tyson "routinely used the antibiotic Gentamicin to prevent illness and death in chicks." FSIS notified Tyson that it must stop using the qualified raised without antibiotics labels, or any variation of a "Raised Without Antibiotics" claim by June 18, 2008.

### Tyson's Competitors Succeed In Enjoining Tyson's Misrepresentations

22. Tyson has been sued by its competitors in *Sanderson Farms, Inc. and Perdue Farms, Inc. v. Tyson Foods, Inc.*, Civil Case No. RDB-08-210 (D. Md.), over its "Raised Without Antibiotics" and "Raised Without Antibiotics that impact antibiotic resistance in humans" advertising. Following a four-day hearing, the District Court in *Sanderson Farms* found that the unqualified "Raised Without Antibiotics" language was false and that the qualified "Raised Without Antibiotics that impact antibiotic resistance in humans" language was misleading. The Court issued a preliminary injunction against Tyson directing among other things: "[Tyson] must remove any and all non-label advertisements … containing language claiming that its chicken products are 'Raised Without Antibiotics,' regardless of whether the statement has qualifying language such as 'Raised Without Antibiotics that impact antibiotic resistance in humans.'"

**CLASS ACTION ALLEGATIONS**

23.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class of all persons and entities who purchased Tyson chicken or chicken products in California after May 16, 2007.  Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors, and assigns; the judicial officers to whom this case is assigned; and any member of the immediate families of excluded persons.

24.     Plaintiff is informed and believes that members of the class are so numerous that their individual joinder in impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class.

25.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

    a.  Whether Defendant engaged in unlawful, unfair, or fraudulent business practices in violation of the California Unfair Competition Law;

    b.  Whether Defendant violated California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

    c.  Whether Defendant fraudulently concealed from Plaintiff and Class members the truth about its use of antibiotics in raising its chickens;

    d.  Whether Defendant had a duty to disclose the truth about its use of antibiotics in raising its chickens;

    e.  Whether the facts Defendant concealed from Plaintiff and Class members are material facts;

    f.  Whether, as a result of Defendant's concealment of and failure to disclose material facts, Plaintiff and Class members acted to their detriment by purchasing Defendant's chicken at a premium price;

      g.    The amount by which Defendant's conduct has inflated the prices paid by Plaintiff and Class members for chicken or chicken products over the amounts they would otherwise have paid; and

      h.    Whether Defendant's conduct caused injury to Plaintiff and the Class members.

26. Plaintiff's claims are typical of the claims of the Class members, as all claims arise from the same course of conduct by Tyson and the relief sought is common.

27. Plaintiff will fairly and adequately represent and protect the interests of all Class members. Plaintiff is represented by counsel competent and experienced in consumer protection and class action litigation.

28. A class action is superior to all other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct.  Even if the Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

29. In the alternative, the Class may be certified under the provisions of Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2) because:

      a.    the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for defendants;

      b.    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be

dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I
**Violation of the Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**

30.    Plaintiff repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

31.    Defendant's acts and practices as alleged in this Complaint constitute unlawful, unfair, and/or fraudulent business practices in violation of the Unfair Competition Law, California Business and Professions Code Section 17200, *et seq*.

32.    Defendant engaged in unlawful business practices by, among other things, engaging in conduct that violates California law governing advertising, including California Business and Professions Code Section 17500 *et seq.*, and the labeling and advertising of food products, including the state Sherman Food, Drug and Cosmetic Law, California Health and Safety Code Sections 109875 *et seq.*, as well as engaging in conduct that constitutes fraudulent concealment and unjust enrichment.

33.    Defendant engaged in unfair business practices by, among other things, engaging in conduct where the utility of that conduct is outweighed by the gravity of the consequences to Plaintiff and Class members, and engaging in conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff and Class members.

34.    Defendant engaged in fraudulent business practices by engaging in conduct that was and is likely to deceive consumers acting reasonably under the circumstances. Defendant's fraudulent business practices include but are not limited to representing that its chickens were raised without antibiotics when they were in fact raised with antibiotics; failing to disclose to consumers, or actively concealing from consumers, that its chickens were raised with antibiotics; and making partial representations that were likely to mislead consumers while concealing its use of animal and human antibiotics to raise its chickens.

35. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have lost money or property by, among other things, paying a premium price for chicken raised without antibiotics when Plaintiff and Class members received chicken that was raised with antibiotics.

36. Plaintiff, on behalf of herself and all Class members, seeks equitable relief, including restitution of all monies wrongfully acquired by Defendant as a result of its unlawful, unfair, and fraudulent business practices, as well as declaratory relief and recovery of attorneys' fees and costs of suit.

**COUNT II**
**False and Misleading Advertising**
**Cal. Bus. & Prof. Code § 17500,** *et seq***.,**

37. Plaintiff repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

38. In violation of Section 17500, in connection with its sales of chicken and chicken products, Defendant made or disseminated statements that are untrue or misleading, and which Defendant knew (or by the exercise of reasonable care should have known) to be untrue or misleading.

39. As a result of these violations of California law, Defendant has been and will be unjustly enriched at the expense of Plaintiff, Class members and the general public.  Specifically, Defendant has been unjustly enriched by its receipt of monies from consumers who purchased Tyson chicken and chicken products advertised as "Raised Without Antibiotics" and  "Raised Without Antibiotics that impact antibiotic resistance in humans" when Tyson uses both animal and human antibiotics to raise its chickens.

40. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have lost money or property by, among other things, paying a premium price for chicken raised without antibiotics when Plaintiff and Class members received chicken that was raised with antibiotics.

41. Plaintiff and the Class are entitled to restitution of any money Defendant acquired through its false and misleading advertising, as well as declaratory relief and recovery of attorneys' fees and costs of suit.

**COUNT III**
**Violation of California Consumers Legal Remedies Act**
**Cal. Civ. Code § § 1750** *et seq.*

42. Plaintiff repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

43. Defendant's chicken and chicken products are "goods" under Cal. Civ. Code § 1761(a).

44. Plaintiff and other Class members are "consumers" under Cal. Civ. Code § 1761(d).

45. Plaintiff's and Class members' purchases of Defendant's chicken constitute "transactions" under Cal. Civ. Code § 1761(e).

46. On June 13, 2008, Plaintiff served Defendant with notice of her claim but Defendant took no action to correct, repair, replace or otherwise remedy the problems within 30 days after their receipt of the notice.

47. Defendant violated the Consumers Legal Remedies Act by, among other things:
    a. Representing that its chicken and chicken products have characteristics, uses or benefits they do not have;
    b. Representing that its chicken or chicken products are of a particular standard, quality, or grade when they are actually of another; and
    c. Advertising its chicken and chicken products with intent not to sell them as advertised.

48. Defendant has made representations, made partial disclosures and failed to disclose material facts in connection with transactions intended to result or that have resulted in Plaintiff and other Class members paying a premium for Defendant's chicken and chicken products.

49. A reasonable consumer expects and assumes that chicken advertised as "Raised Without Antibiotics" and "Raised Without Antibiotics that impact antibiotic resistance in humans" has not been injected with or fed antibiotics prior to sale to the public. Defendant either knew or should have known that it did use antibiotics to raise its chickens. Defendant was and is in a superior position to know whether or not it used antibiotics to raise its chickens and has information about the antibiotics used to raise its chickens that is not available to the public.

50. Plaintiff, on behalf of herself and all other Class members, seeks actual, statutory and punitive damages, as well as restitution, injunctive relief, declaratory relief, attorneys' fees and costs of suit, and other relief as appropriate.

## COUNT IV
### Fraudulent Concealment

51. Plaintiff repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

52. Defendant knew or should have known that it uses both animal and human antibiotics to raise its chickens.

53. Defendant intentionally, negligently or recklessly concealed from and/or failed to disclose to Plaintiff and Class members that its chickens are raised with antibiotics.

54. Defendant was under a duty to Plaintiff and Class members to disclose its use of antibiotics because (a) Defendant was in a superior position to know the truth; (b) Defendant made partial disclosures about its use of antibiotics without revealing the truth; and (c) Defendant actively concealed its use of antibiotics from Plaintiff and Class members.

55. The facts Defendant concealed and/or failed to disclose are material facts in that a reasonable person would have considered these facts to be important in deciding whether to purchase Defendant's chicken and chicken products at a premium price. Had Plaintiff and Class members known the truth about Defendant's use of antibiotics, they would not have purchased Defendant's chicken and chicken products at a premium price.

56. Defendant intentionally, negligently or recklessly concealed and/or failed to disclose the truth about its use of antibiotics for the purpose of inducing Plaintiff and Class members to purchase Defendant's chicken and chicken products at a premium price, and Plaintiff and Class members justifiably relied to their detriment upon the truth and completeness of Defendant's representations. This is evidenced by Plaintiffs' and the Class members' purchases of Defendant's chicken and chicken products at a premium price.

57. As a direct and proximate cause of Defendant's misconduct, Plaintiff and Class and members have suffered actual damages in that, among other things, they paid a premium price for

chicken raised without antibiotics when Plaintiff and Class members received chicken that was raised with antibiotics. Plaintiffs and Class members are entitled to monetary damages, attorneys' fees and costs of suit, and interest.

58. Defendant acted with malice, oppression or fraud, engaged in despicable conduct with a willful and conscious disregard of the rights or safety of others, and otherwise subjected Plaintiff and Class members to a cruel and unjust hardship in conscious disregard of their rights. Plaintiff and Class members are therefore entitled to an award of exemplary or punitive damages.

## COUNT V
**Unjust Enrichment**

59. Plaintiff repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

60. Defendant has received a benefit from Plaintiff and Class members in the form of the prices Plaintiff and Class members paid for chicken that was advertised as "Raised Without Antibiotics" or "Raised Without Antibiotics that impact antibiotic resistance in humans."

61. Defendant is aware that it received this benefit from Plaintiff and Class member.

62. Defendant received this benefit to the detriment of Plaintiff and Class members, and continues to retain this benefit to the detriment of Plaintiff and Class members.

63. Under the circumstances, it would be inequitable for Defendant to retain this benefit.

64. As a result of Defendant's unjust enrichment, Plaintiff and Class members have sustained damages in an amount to be determined at trial and seek full disgorgement and restitution of Defendant's enrichment, benefits and ill-gotten gains acquired as a result of its unlawful or wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following prayer for relief, on behalf of herself and all others similarly situated:

1. An order certifying the Class and appointing Plaintiff and her counsel to represent the Class;

2. Restitution and all other forms of equitable monetary relief;

3. Actual, statutory and exemplary or punitive damages;

4. Injunctive and declaratory relief;

5. Attorneys' fees, costs and expenses of suit, including expert witness fees; and

6. Such other relief as the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 14, 2008

Respectfully submitted,

**GIRARD GIBBS LLP**

By:____/s_____
    Daniel C. Girard
    dcg@girardgibbs.com
    Amanda M. Steiner
    as@girardgibbs.com
    Alex C. Turan
    act@girardgibbs.com
    601 California Street, 14th Floor
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Facsimile: (415) 981-4846

Counsel for Plaintiff Eileen Epstein

## CERTIFICATE OF SERVICE

I, Angeline C. Ellis, hereby certify that on July 15, 2008, I filed the following document(s):

**FIRST AMENDED CLASS ACTION COMPLAINT**

By ECF (Electronic Case Filing):  I e-filed the above-detailed document utilizing the United States District Court, Northern District of California's mandated ECF service on July 15, 2008.  Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Francisco, CA  July 15, 2008

                                                /S/ Angeline C. Ellis